**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**–Northern Division–**

IESHA HENRIQUES
5405 Fairlawn Ave.
Baltimore, MD 21215
and

EMBRIA HENRIQUES
5405 Fairlawn Ave.
Baltimore, MD 21215,

       *Plaintiffs*

       –v–

THE MAYOR AND CITY COUNCIL
  OF BALTIMORE
100 North Holliday Street
Baltimore, MD 21202
 SERVICE ON:

 CITY SOLICITOR: James L. Shea
 City Hall- Department of Law
 100 North Holliday Street
 Baltimore, MD 21202

and

TIFFANY MORRIS
10 N. Calvert Street #903
Baltimore, MD 21202,

       *Defendants.*

Civil Action No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Iesha and Embria Henriques sue the City of Baltimore and their former landlord, Tiffany Morris. Plaintiffs state as follows:

## Introduction

1. Plaintiffs file suit after having lost all of their belongings due to an unconstitutional provision of the Baltimore City Housing Code that declares tenants' personal belongings to be abandoned at the time of an eviction, without providing notice of when the eviction will occur or sufficient warning that the tenants' belongings will be deemed abandoned when the eviction does occur.

2. In Baltimore City, as throughout Maryland, all residential evictions are performed by the sheriff's office. Although for the most common type of eviction – a failure to pay rent – the Baltimore City Code requires that a landlord provide advance notice of any eviction with a prominent warning that belongings in the property at the time of the eviction will be deemed abandoned, the Baltimore City Code does not have any such requirements for evictions in tenant holding over cases. Nevertheless, the City Code still destroys tenants' property interests in personal property by providing that at the time of the eviction, the tenant's belongings are conclusively deemed "abandoned" even where there is clear evidence that the belongings are not ownerless. BALTIMORE, MD., CITY CODE ART. 13, § 8A-4.

3.  This Court has recently ruled that the § 8A-4 is unconstitutional with regard to tenant holding over cases in *Todman v. Mayor & City Council of Baltimore*, No. CV DLB-19-3296, 2022 WL 4548640 (D. Md. Sept. 29, 2022). The initial complaint in the *Todman* case was filed in 2019, and in 2020 a different judge on this Court denied the City's Motion to Dismiss that case, finding merit in the constitutional challenges raised therein. *Todman v. Mayor & City Council of Baltimore*, 488 F. Supp. 3d 218, 225 (D. Md. 2020). Yet the Mayor and City Council of Baltimore ("Defendant Baltimore City") never took any steps to change its unconstitutional ordinance, leading to the Plaintiffs' losses in this case.

4. On September 28, 2022, Defendant Morris seized all of Plaintiffs' personal property when she had the Plaintiffs evicted without notice of the eviction date or warning that their belongings would be deemed forfeited under § 8A-4. Within four days of the eviction, October 1, 2022, Defendant Morris had been specifically informed of this Court's recent ruling in the *Todman* case, yet Defendant Morris has refused to return any of Plaintiffs' belongings, including items that would be worthless to Defendant Morris but mean the world to Plaintiffs, such as an urn containing the ashes of Plaintiff Iesha Henriques' deceased daughter (Plaintiff Embria Henriques' sister), irreplaceable family photos, important medications, and school uniforms for Plaintiff Embria Henriques' children.

5.  Thus, as a result of the City's unconstitutional ordinances, Plaintiffs have been deprived of all of their property; not just expensive electronics and kitchen equipment, including items in the household that did not even belong to them like laptops on loan to Plaintiff Embria Henriques' children from their school, but also irreplaceable family heirlooms.

### Parties

6.  Plaintiffs are adult citizens of Maryland.  Plaintiff Iesha Henriques is Plaintiff Embria Henriques' mother, and they live together with Plaintiff Embria Henriques' three daughters, aged 13, 11 and 10.

7.  Defendant Baltimore City is a municipal corporation organized and existing under the laws of the State of Maryland.

8.  Defendant Tiffany Morris is a Maryland resident.

### Jurisdiction and Venue

9.  Plaintiffs bring claims against Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation of Plaintiffs' federal constitutional rights under BALTIMORE, MD., CITY CODE ART. 13, § 8A-4. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1343.

10. This Court has supplemental jurisdiction over Plaintiffs' additional claims against Defendant Morris under 28 U.S.C. § 1367. Maryland law provides that any claim involving the validity of an ordinance must include the relevant local government as a defendant. MD. CODE, CTS. & JUD. PROC., § 3-

4

405 (b). Accordingly, including Plaintiffs' claims against Defendant Morris in this action is appropriate here because Defendant Baltimore City would have to be named in any other lawsuit against Defendant Morris, creating a potential risk of inconsistent outcomes.

11. Venue is proper in this District under 28 U.S.C. § 1391(b).

### The Rental of the Property

12. In March of 2021, Plaintiffs moved into a property belonging to Defendant Morris located at 4008 Gelston Drive, Baltimore, MD 21229 (the "Property").

13. Plaintiffs' rental of the Property from Defendant Morris was for their own personal use as a home.

14. Rent was $1,625.00 a month and Plaintiffs paid a security deposit of $3,250.00.

15. For all periods of time relevant to this Complaint, the Property was not licensed as a rental property, as is required under BALTIMORE, MD., CITY CODE ART. 13, § 5-4.

16. Within a few months of Plaintiffs moving in, the Property developed several severe habitability issues. The Property was rented with a finished basement intended as a living area with a bedroom where Plaintiff Embria Henriques would sleep. However, the drain in the basement would back up with wastewater due to faulty plumbing, flooding the basement and producing

a hazardous moldy odor. Plaintiff Embria Henriques had to throw out bags of clothing and shoes after they were ruined in one such flooding incident, and spent most nights sleeping in the living room because of the stench caused by the flooding. Plaintiffs informed Defendant Morris of the plumbing issue, but Defendant Morris did not take steps to try to resolve the issue.

17. Additionally, the central air conditioning in the Property never worked at any point during the tenancy. When Plaintiffs informed Defendant Morris of the issue, Defendant Morris told them to buy fans and said that Defendant Morris would reimburse them for the fans, which she never did. This caused Plaintiffs and Plaintiff Embria Henriques' daughters great discomfort during the summer months.

18. Due to the poor condition of the Property, Plaintiffs set about attempting to secure a new place to live, which proved challenging. They provided updates to Defendant Morris regarding their search as well as setbacks, but were working towards securing a new place to live.

19. However, on July 11, 2022, Defendant Morris filed a tenant holding over action against Plaintiffs (the "Tenant Holding Over Action"). Because Plaintiffs were planning on moving out already and were close to securing a new rental property, they did not appear or contest the Tenant Holding Over Action, believing that they could move into their new home by the time any eviction would occur under the Tenant Holding Over Action or that they could make

arrangements to move and temporarily store their belongings once they were told when an eviction would occur.

20. Plaintiffs believed that they would be warned when any eviction was scheduled, and did not know that in Baltimore City any of a tenants' belongings in a property at the time of an eviction are conclusively deemed abandoned under § 8A-4.

## The Law of Residential Evictions in Baltimore City

21. Since 2013, Maryland has prohibited non-judicial evictions for residential tenancies. MD. CODE, REAL PROP. § 8–216. Unless the tenant voluntarily vacates the property, an eviction may be conducted only "[i]n accordance with a warrant of restitution issued by a court and executed by a sheriff or constable." § 8–216(b)(2)(i).

22. A landlord who is allegedly entitled to possession of a property, whether through the tenant's non-payment of rent, breach of lease, or refusal to vacate the property at the expiration of the lease, can file an action seeking possession in the District Court for the county where the property is located.  In the case of a tenant holding over action, notice of the action is given to tenants either through personal service or posting on the property. Notice by posting is permitted because the tenant holding over action is an *in rem* action.  Indeed, Plaintiffs were not personally served in the Tenant Holding Over Action, and only received notice of the lawsuit through a posting on the Property.

23. If the landlord prevails at trial, the District Court will issue an order granting the landlord possession, which gives the landlord the ability to then file a petition for warrant of restitution.

24. A warrant of restitution directs the sheriff's office to schedule and perform an eviction. In Baltimore City, the landlord has up to 60 days to file a petition for warrant of restitution with the District Court of Maryland after the landlord prevails at trial. BALTIMORE, MD., PUBLIC LOCAL LAWS § 9-6. If the petition is granted, the landlord then brings the warrant of restitution to the Baltimore City Sheriff's Office, which then schedules an eviction date, typically for a few weeks later.

25. In general, once the eviction is scheduled, BALTIMORE, MD., CITY CODE ART. 13, § 8A-2 requires the landlord to give notice to the tenant of the pending eviction date, including by mail at least 14 days prior to the scheduled eviction and by posting on the property at least 7 days prior to the scheduled eviction. Among other things, the required notice must "prominently warn the tenant that any property left in the leased dwelling will be considered abandoned and may be disposed of on execution of the warrant of restitution." § 8A-2 (d)(4).

26. However, Baltimore City has excluded from any notice requirements several kinds of evictions, including tenant holding over actions. § 8A-2 (a)(2)(iii). This exclusion serves no valid public purpose.

27. Nevertheless, even though tenants are not warned that their belongings are in jeopardy or provided notice of the eviction date, the Baltimore City Code still provides that the belongings of tenants holding over who are evicted are deemed "abandoned," and that the landlord may dispose of them at will and without liability to the tenant. § 8A-4.

28. Tenants are never given an opportunity, either before or after their property is confiscated, to rebut the City's forced presumption that they have abandoned their property.

29. Because *in rem* tenant holding over actions are limited to the question whether a landlord is entitled to reclaim possession over the leased premises, tenants have no opportunity to address their property interests in their personal property in these proceedings. In short, tenant holding over actions have nothing to do with tenants' personal property interests, only possession of the real property.

### The Lead-up to the Eviction

30. Plaintiffs continued to diligently move towards securing a new home. They were not certain when the home would become available because they were waiting on an inspection, but believed they would be able to move at the end of September, 2022.

31. The Baltimore City District Court issued a warrant of restitution on September 6, 2022 in the Tenant Holding Over Action, directing the sheriff to schedule an eviction.

32. Defendant Morris was aware of Plaintiffs' plans on moving out and asked them for updates, which they provided. Indeed, Defendant Morris went to the Property on September 17, 2022 with a property inspector and spoke with Plaintiff Iesha Henriques, telling her that she was working to schedule an eviction and that Plaintiffs would hear from her once the eviction was scheduled.

33. At some point between September 6, 2022 and September 27, 2022, Defendant Morris was informed by the Sheriff's Office of the date for the eviction, but provided Plaintiffs with no notice that the eviction had been scheduled and never provided any warning to Plaintiffs that she would seize their belongings on or about the Property at the time of the eviction.

34. Plaintiffs were left unaware that the eviction had been scheduled for September 28, 2022 or that by virtue of the City Code, the City would destroy their property interests in all of their worldly belongings by deeming them abandoned.

### The Eviction

35. On the morning of September 28, 2022, Plaintiff Embria Henriques dropped Plaintiff Iesha Henriques off at work, dropped her daughters off at

school, and then, by happenstance, completed signing a lease for her new home and received keys to her new home. Plaintiff Embria Henriques returned to the Property around noon, at which point she discovered that the locks had been changed with all of Plaintiffs' belongings locked inside.

36. Plaintiff Embria Henriques initially called the police, believing she had been illegally locked out because no one had warned Plaintiffs of the eviction date. The police arrived and, after calling down to the sheriff's office, confirmed to Plaintiff Embria Henriques that the eviction had been performed with the presence of a sheriff and that the police could not help her get her belongings back.

37. Plaintiffs immediately frantically reached out to Defendant Morris, asking for access to their belongings and pleading with her to allow them to retrieve critical items like the urn and the children's school uniforms.

38. Defendant Morris refused, texting to Plaintiff Embria Henriques: "Everything in the property and the building belongs to me.  You can drive by everyday and see if your sister's ashes are on the porch like I had to drive by everyday for a year to see if you came to your free loading senses and moved out of my house."

39. Defendant Morris refused Plaintiffs' repeated pleas for access to the Property to remove their belongings.

40. On Saturday, October 1, 2022, Defendant Morris was provided with a letter from Plaintiffs' Counsel that pointed out this Court's recent ruling in the *Todman* case striking down § 8A-4 and again requesting the return of Plaintiffs' belongings.  Again, Defendant Morris refused.

41. Accordingly, Plaintiffs have been deprived, perhaps permanently, of the vast majority of their personal property, including, among other things, the urn containing the ashes of Plaintiff's Iesha Henriques' deceased daughter (Plaintiff Embria Henriques' sister), irreplaceable family photos, documents and keepsakes, important medications, the school uniforms for Plaintiff Embria Henriques' children, as well as clothing, electronics and furniture.

42. Plaintiffs also suffered humiliation, discomfort, and distress as a result of their mistreatment by Defendant Morris and the unconstitutional ordinances that she exploited.

**COUNT ONE**
**Damages Under 42 U.S.C. § 1983**
**(Defendant Baltimore City)**

43. The allegations set forth in all previous paragraphs are incorporated herein by reference.

44. The Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution guarantee that no person shall be deprived of property without due process of law.

12

45. The Takings Clause of the Fifth Amendment prohibits the taking of personal property without a valid public purpose and without just compensation. The Takings Clause applies to Baltimore City through the Due Process Clause of the Fourteenth Amendment.

46. The Fourth Amendment prohibits unreasonable seizures of personal property.  The Fourth Amendment applies to Baltimore City through the Due Process Clause of the Fourteenth Amendment.

47. BALTIMORE, MD., CITY CODE ART. 13, § 8A-4, which strips many evicted residential tenants of their property without any prior notice of the consequences of eviction, acts to deprive tenants of their property without due process of law. It also acts as an unreasonable seizure in violation of the Fourth Amendment. The ordinance, with regard to the classes of tenants who do not receive any prior notice of the consequences of eviction nor the dates of a scheduled eviction, is facially unconstitutional. Additionally, the ordinance is unconstitutional as applied to Plaintiffs.

48. In addition, application of the City ordinance, which has the effect of conclusively deeming property to be abandoned and up for grabs by landlords, constitutes a taking. No valid public purpose is served by destroying tenants' property interests in their personal belongings, particularly when the tenants' intentions to maintain their ownership interests in that property is undeniable. The fact that the City does not appropriate the property for itself,

13

but rather allows landlords to exercise complete dominion over the property does not remove the ordinance from the reach of the Takings Clause. To the contrary, forcing tenants to give up their property rights so that other private parties may gain those rights exacerbates the constitutional violation.

49. "Abandonment" in property law means the voluntary relinquishment or renunciation of a property right, or an ownership vacuum resulting from the owner's death without heirs or a valid will. The City's distortion of this common law concept effects a taking of personal property subject to the Fifth Amendment. The City cannot sidestep the Takings Clause by disavowing or redefining traditional property interests.

50. BALTIMORE, MD., CITY CODE ART. 13, § 8A-4 is an ordinance that was officially adopted and promulgated by Defendant Baltimore City.

51. Plaintiffs have been deprived of the vast majority of their worldly belongings as a direct result of BALTIMORE, MD., CITY CODE ART. 13, § 8A-4, which operated to deem their belongings "abandoned" and purported to absolve Defendant Morris from any liability to Plaintiffs regarding their belongings.

52. Accordingly, Defendant Baltimore City has deprived, or caused to be deprived, Plaintiffs of their rights secured by the Fourth Amendment, the Due Process Clause under the Fifth and Fourteenth Amendments and the Takings Clause under color of law, and is liable for the damages suffered by Plaintiffs as a result.

## COUNT TWO
### Declaratory Judgment
### (All Defendants)

53. The allegations set forth in all prior paragraphs are incorporated herein by reference.

54. Upon information and belief, Defendant Morris still retains certain items of personal property belonging to Plaintiffs, asserting purported ownership of those items by operation of BALTIMORE, MD., CITY CODE ART. 13, § 8A-4.

55. Accordingly, Plaintiffs seek declaration that BALTIMORE, MD., CITY CODE ART. 13, § 8A-4 is invalid as contrary to the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and that any of Plaintiffs' belongings in Defendant Morris' possession are not abandoned and still belong to Plaintiffs.

## COUNT THREE
### Damages Under 42 U.S.C. § 1983
### (Defendant Morris)

56. The allegations set forth in all prior paragraphs are incorporated herein by reference.

57. BALTIMORE, MD., CITY CODE ART. 13, § 8A-4 is invalid as contrary to the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States for the reasons set forth above.

58. Through § 8A-4, Defendant Baltimore City empowers private landlords such as Defendant Morris to exercise unconstitutional powers over the belongings of tenants by operation of the ordinance that purports to strip tenants of their property rights and grant landlords immunity form the tenants regarding that property.

59. At a minimum, Defendant Morris was aware of the constitutional invalidity of § 8A-4 four days after the eviction, when she was informed of this Court's recent ruling in *Todman*, and she still had the vast majority of Plaintiffs' belongings in her possession at that time, yet Defendant Morris has taken no action to return Plaintiffs' belongings.

60. Accordingly, Defendant Morris has deprived, or caused to be deprived, Plaintiffs of their rights secured by the Fourth Amendment, the Due Process Clause under the Fifth and Fourteenth Amendments and the Takings Clause under color of law, and is liable for the damages suffered by Plaintiffs as a result.

## COUNT FOUR
### Conversion
### (Defendant Morris)

61. The allegations set forth in all prior paragraphs are incorporated herein by reference.

62. Defendant Morris intended to exercise and did exercise control over Plaintiffs' personal property.

16

63. Defendant Morris's exercise of control over Plaintiffs' property was unlawful for several reasons: First, BALTIMORE, MD., CITY CODE ART. 13, § 8A-4, facially and as applied in this case, is unconstitutional because it deprives tenants of their property without Due Process and effects a taking without just compensation and without a valid public purpose. Second, Defendant Morris was aware that Plaintiffs were planning on moving out by the end of September and believed that they would be informed of the eviction date when it was scheduled, and indeed contributed to that belief, and then took no action to inform them of the eviction date when it was scheduled.

64. At a minimum, Defendant Morris is liable for conversion with regard to any of Plaintiffs' belongings that were still in her possession when she received the October 1, 2022 letter from Plaintiffs' lawyer alerting her of the decision in the *Todman* case.

65. By retaining Plaintiffs' belongings without legal justification, Defendant Morris engaged in a conversion of Plaintiffs' belongings.

66. In converting Plaintiffs' belongings without legal justification, Defendant Morris acted maliciously, willfully and wantonly and with reckless disregard for the rights of Plaintiffs, for her own benefit, intending to punish Plaintiffs for perceived slights against her.

67. As an actual and proximate result of Defendant Morris' conduct, Plaintiffs sustained the losses and damages set forth above.

**COUNT FIVE**
**Unjust Enrichment**
**(Defendant Morris)**

68. The allegations set forth in all previous paragraphs are incorporated herein by reference.

69. Defendant Morris was enriched as a result of her taking of Plaintiffs' belongings. Upon information and belief, she retained some belongings for her own use, sold others, and disposed of the remaining property.

70. Particularly given that Defendant Morris was quickly made aware of the constitutional infirmities of § 8A-4, Defendant Morris' retention of Plaintiffs' belongings constitutes an unjust enrichment.

**COUNT SIX**
**Violation of the Maryland Consumer Debt Collection Act**
**(Defendant Morris)**

71. The allegations set forth in all previous paragraphs are incorporated herein by reference.

72. Under Maryland law, any debt collection activity by a landlord to collect unpaid rent regarding any unlicensed period in jurisdictions where a license is required can form the basis of a cause of action for violating MD. CODE, COMM. L. § 14-202 (8) and (11).

73. Defendant Morris was aware that the Property was unlicensed throughout Plaintiffs' tenancy, yet engaged in aggressive collection efforts for any unpaid rent. For example, on October 4, 2021, after Plaintiffs fell behind

18

on their rent payments, Defendant Morris wrote to them claiming that Plaintiffs owed her $2,818.75 in unpaid rent and late fees for a period in which the Property was unlicensed, stating: "You are currently in jeopardy of a formal eviction due to your consistent delinquency in payment." Shortly thereafter, Defendant Morris sent Plaintiff Iesha Henriques a text message stating: "The payments need to be made in full no later than Friday otherwise, I will take the final steps to file a formal eviction as this process has already been started."

74. When Defendant Morris claimed, attempted to and did enforce a right with knowledge that she had no right to do so by claiming that she would move to evict Plaintiffs if they did not pay her rent that she was specifically prohibited from collecting under BALTIMORE, MD., CITY CODE ART. 13, § 5-4, Defendant Morris violated MD. CODE, COMM. L. § 14-202 (8) and (11).

75. Plaintiffs made thousands of dollars in rent payments in response to the illegal threats to evict them for non-payment of rent, and experienced stress and anxiety as a result of Defendant Morris' threats.

## COUNT SEVEN
### Violation of the Maryland Consumer Protection Act
### (Defendant Morris)

76. The allegations set forth in all previous paragraphs are incorporated herein by reference.

77. Under Maryland law, the rental of an unlicensed residential property in a jurisdiction where a license is required constitutes an unfair, abusive or deceptive trade practice under MD. CODE, COMM. L. § 13-303.

78. Plaintiffs were damaged by the unlicensed rental of the Property because of the habitability issues in the Property regarding the flooding from faulty plumbing and the lack of air conditioning during the summer months.

79. Moreover, any violation of the Maryland Consumer Debt Collection is also an unfair, abusive or deceptive practice under the Maryland Consumer Protection Act.  MD. CODE, COMM. L. § 13-303 (14)(iii).

<b><u>COUNT EIGHT</u></b><br><b>Security Deposit - MD. CODE, REAL PROP. § 8–203</b><br><b>(Defendant Morris)</b>

80. The allegations set forth in all previous paragraphs are incorporated herein by reference.

81. Under MD. CODE, REAL PROP. § 8–203 (e)(4), if a landlord, without reasonable basis, fails to return any part of a security deposit, plus accrued interest, within 45 days after the termination of a tenancy, the tenant may sue for up to three times the amount withheld, plus reasonable attorneys' fees.

82. Plaintiffs paid a security deposit of $3,250.00 at the inception of the tenancy. Upon information and belief, Defendant Morris has illegally applied those sums to unpaid illegal rent incurred during a time that the Property was unlicensed, and is refusing to return Plaintiffs' security deposit on that basis.

83. Accordingly, Defendant Morris is withholding Plaintiffs' security deposit without a reasonable basis and is liable to Plaintiffs under MD. CODE, REAL PROP. § 8–203 (e)(4).

## COUNT NINE
### Replevin
### (Defendant Morris)

84. The allegations set forth in all previous paragraphs are incorporated herein by reference.

85. Under FED. R. CIV. PROC. 64 (b), this Court has the ability to grant a writ of replevin requiring the return of Plaintiffs' belongings from Defendant Morris.

86. Plaintiffs have demanded the return of their belongings, but Defendant Morris has refused.

87. Defendant Morris is unjustly detaining Plaintiffs' belongings, to with Plaintiffs are entitled to immediate possession.

WHEREFORE, Plaintiffs demand the following relief jointly and severally, against all Defendants:

A.  Compensatory damages in an amount to be determined at trial, but no less than $100,000.00;

B. A declaratory judgment that BALTIMORE, MD., CITY CODE ART. 13, § 8A-4 is unconstitutional under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution;

C. Costs, and such other and further relief as this Court may deed appropriate under the circumstances; and

D. Attorneys' fees pursuant to 42 U.S.C. § 1988.

Further, Plaintiffs demand the following relief from Defendant Morris:

E. Punitive damages in an amount to be determined at trial, but no less than $50,000.00;

F. Three-times the amount of their security deposit pursuant to MD. CODE, REAL PROP. § 8–203 (e)(4);

G. Attorneys' fees on Plaintiff's claims under Counts Seven and Eight; and

H. That the Court promptly schedule a hearing with prior notice to Defendant Morris to determine whether a writ of replevin should be issued for immediate seizure and delivery of Plaintiffs' personal belongings, and judgment against Defendant Morris for possession of those belongings.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury as to all issues so triable in this action.

Dated:    October 24, 2022                          Respectfully submitted,

*/s/ Joseph S. Mack*
Joseph S. Mack
(D. Md. Bar No. 29021)
THE LAW OFFICES OF JOSEPH S. MACK
PO Box 65066
Baltimore, MD 21209
(443) 423-0464
joseph@macklawonline.com

*Attorney for Plaintiffs Iesha and*
*Embria Henriques*