**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **IESHA HENRIQUES, *et al*.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Civil Action No.: 1:22-cv-2727 LKG** |
| **MAYOR AND CITY COUNCIL** | ) | |
| **OF BALTIMORE, *et al*.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Defendant, Mayor and City Council of Baltimore (the "City"), through undersigned counsel, submits this Memorandum of Law in support of its Motion to Dismiss or in the Alternative Motion for Summary Judgment.

## I. INTRODUCTION

This case arises out of a constitutional challenge filed pursuant to 28 U.S.C. § 1983, seeking monetary damages and the invalidation of a 15-year-old ordinance passed by the Mayor and City Council of Baltimore. Balt. City, Md. Hous. and Urban Renewal Code, art. 13 [City Housing Code], § 8A-1, *et seq*. (hereinafter, the "Eviction Chattel Law"). Specifically, Plaintiffs are challenging a provision in the law that deals with the disposition of personal property that remains in or around a dwelling after a judicially ordered eviction. They seek six-figure monetary relief from the City for a judicially ordered eviction that occurred after a hearing, and after Plaintiff was given advance notice of the date and time of the eviction, as well as the potential consequences for leaving their personal property in the eviction property from both the Sheriff's Department and the District Court of Maryland.

From the City's records, although the ordinance in question has existed for over 15 years, this is only the second case to have been brought challenging the law. Both matters were filed by the same attorney, both in the past few years, and they involve plaintiffs who did not contest their evictions. Plaintiffs reference the concurrent case *Marshall Todman v. Mayor and City Council of Baltimore*, No. 19-CV-3296, 2022 WL 4548640 (D. Md. Sept. 29, 2022) (the "Todman Matter") in their Complaint. However, that matter has no bearing on this one for several important reasons.

First, in *Todman*, Judge Deborah L. Boardman specifically rejected those plaintiffs' facial challenge to the City's law. *See Todman*, No. 19-CV-3296, 2022 WL 4548640, at *19, n.13. She held that she could not and would not make a blanket ruling that the ordinance was unconstitutional in all cases. *Id*. In fact, as detailed below, this case is factually distinguishable from *Todman* in matters of due process that Judge Boardman outlined in her opinion. Second, even if *Todman* was not factually distinguishable, it is axiomatic that the ruling in that case, especially as it relates to the constitutionality of City ordinances is not precedent for this court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case…[o]therwise said, district court decisions—unlike those from the courts of appeal—do not necessarily settle constitutional standards…")(internal citations omitted). Taken a step further, "published district court opinions, like unpublished opinions from [courts of appeal], have no precedential value, it follows that [courts] should not consider them. But, even if [courts] do classify published district court opinions as relevant 'persuasive authority', they are 'no match for [courts of appeal] precedents.'" *Booker v. South Carolina Department of Corrections*, 855 F.3d 533, 545 (2017), *quoting Hope v. Pelzer*, 536 U.S. 730, 747 (2002).

This case is a perfect illustration about why the above referenced precedent regarding the authority of this court and its sister courts is so deeply embedded in our jurisprudence. This court should and must review this matter anew and reach the opposite result.

As detailed below, Plaintiffs were provided with due process in the form of a court hearing they failed to attend, Sheriff's notice posted to the subject property, and court order mailed to their last known address. To put it simply, the notice provisions in the challenged law have no bearing on this matter because Plaintiffs were provided with notice and opportunity for a hearing and failed to exercise any of their due process rights. Instead, Plaintiffs elected to not engage in the process and notice afforded them by multiple government agencies and now seek redress from the City because of their personal failures. Their claims fail as a matter of law and should be rejected.

## II. STATEMENT OF FACTS

### A. The Eviction Chattel Law

The Eviction Chattel Law ("ECL"), or City Housing Code, § 8A-1, *et seq*., governs several issues related to the disposition of tenant property after a judicially ordered residential eviction. It governs "Eviction chattels," which are "property removed from a leased dwelling under a warrant of restitution." § 8A-1(b). A "warrant of restitution" is the eviction order issued by the District Court of Maryland and executed by the sheriff to allow a landlord to take possession of a dwelling from an evicted tenant. *See Hall v. Greystar Management Services, LP*, 28 F.Supp.3d 490, 492 (D. Md. 2014) and Md. Code Ann., Real Prop., ["RP"], § 8-216(b)(2) (2019). It also governs other property left in a dwelling that has yet to be removed. *See* ECL § 8A-4. The ordinance was enacted to, *inter alia*, prevent the property of former tenants from being thrown onto the streets and alleyways of the City after an eviction proceeding and provide landlords, who obtained the legal right to possess their properties, the ability to regain full possession and to re-lease those

dwellings in a timely and efficient manner after an eviction. It dictates the rights and responsibilities of both the landlord and tenant *vis-a-vis* property left in a dwelling after the warrant of restitution is executed by the sheriff. *Id*. § 8A-4. Specifically, it defines when and how personal property left in a dwelling after an eviction is determined to be abandoned and the landlord's duties regarding that property. *Id*. §§ 8A-4 - 8A-6. It prohibits landlords from simply dumping the property onto the street and instead forces them to dispose of the property by transporting it to a landfill, donating it to charity, or by some other legal means. *Id*. § 8A-5. It also imposes penalties on any person, including landlords, who violate the ordinance's provisions related to the disposal of eviction chattel. *Id*. § 8A-9.

Local governments of similar population size to the City, like Baltimore County and Prince George's County, have enacted laws strikingly similar to that of the City. *See* Baltimore County

Md. Code § 35-3-103 (2022)[1] and Prince George's County, Md. Code § 13-164 (2022).[2] And, similar to the ECL, they buttress the Maryland Real Property article.

Plaintiffs' challenge focuses on two aspects of the City's ordinance: § 8A-2(a)(2) and § 8A-4. *See* Complaint, *passim*. [ECF 1]. Generally, § 8A-2(a)-(b) require that once the District

---

[1] Baltimore County, Md., Code § 35-3-103 states:

§ 35-3-103. - PLACEMENT OF PERSONAL PROPERTY IN CASE OF EVICTION.
(a) *In general.*
(1) A designated authority executing a warrant of restitution shall place the property of the tenant that has been removed from the leased premises:
(i) On the landlord's property; and
(ii) 1. In a place designated by the landlord; or
2. If no place is designated by the landlord, in a place as near as possible to the leased premises.
(2) The property of the tenant may not be placed on a public highway, a public right-of-way, or public property.
(3) Property removed from the leased premises in accordance with a properly issued warrant of restitution shall be considered abandoned.
(b) *Mobile home or trailer.*
(1) When the tenant's property to be removed is a mobile home or a trailer as defined under § 8A-101 of the Real Property Article of the Annotated Code of Maryland, the landlord may direct the property to remain at its existing location.
(2) The mobile home or trailer may not be placed on a county highway or right-of-way or on any public property other than a land disposal site.
(3) The landlord shall post the mobile home or trailer as evicted property while it remains on the landlord's property.
(c) *Penalty.* A person who violates this section is subject to a civil penalty of $1,000.

[2] Prince George's County, Md., Code § 13-164 provides:

Sec. 13-164. - Evictions; Placement of abandoned property.
(a) After a warrant of restitution is executed, the landlord shall dispose of the property of a tenant. In no event may any of the tenant's property be placed on a public right-of-way or on any public property. Any property removed from the leased premises pursuant to a properly issued warrant of restitution shall be deemed abandoned.
(b) If the tenant or the tenants' agent is present at the time the warrant of restitution is executed, the tenant shall be permitted to salvage and transport the tenant's property removed from the leased premises, after the warrant of restitution is executed, for a reasonable period of time, not to exceed four hours.
(c) This section shall not apply to County owned property.

Court[3] has entered a judgment in favor of the landlord for possession of the dwelling, the landlord notifies the tenant of the date the warrant of restitution will be executed by the sheriff. However, pursuant to § 8A-2(a)(2), there are exceptions to this notice requirement for classes of landlord tenant judgments including, *inter alia*, tenant holding over and breach of lease actions filed under RP §§ 8-402 and 8-402.1, respectively. Specifically, under State law, absent a motion to stay the enforcement of the judgment or an appeal, it is required that the landlord be placed back in actual possession of its property upon entry of the judgment - no delay is permissible.

However, these provisions are not at issue in this case. As detailed below, Plaintiffs were provided with notice of the date and time of the eviction as well as citation to and summary of the ECL along with contact information for legal help should they require same. Therefore, whether the ordinance required such notice is not determinative of the Plaintiffs' recovery—their claims fail because even though no notice was required, it was provided to them in advance of the eviction date.

**B. Maryland Landlord-Tenant Possessory Actions**

There are three main means of repossessing rented property from tenants in this state. RP § 8-401, *et seq.* only relates to failure to pay rent actions—this is made clear in RP § 8-401(a). In addition, RP § 8-402, *et seq.* governs tenant holding over actions and RP § 8-402.1, *et seq.* governs breach of lease actions. The distinction is important because of the three types of actions, *only* failure to pay Rent actions filed under RP § 8-401 offers the tenant the right of redemption, *i.e.*, the ability to remain in the real property despite a judgment for possession being entered against the tenant. The tenant retains this right up to and including the moment before the sheriff arrives

[3] Here, the term "District Court" means the District Court of Maryland which has exclusive original jurisdiction over landlord tenant disputes issues under Maryland law. *See* MD. CODE ANN., CRTS. & JUD. PROC. ART. § 4-401 (2010).

to effectuate the eviction. *See* RP § 8-401(e)(1). In failure to pay rent actions, it is imperative that the tenant be given advance notice of when the sheriff will arrive as they have the option to redeem the property, *i.e.*, "pay and stay." Thus, because of this State law requirement, § 8A-2(a)-(b) of the subject City ordinance requires that these tenants be afforded advance notice of the eviction date to allow for redemption of the dwelling. This distinction is also addressed in Subtitle 9 of the Code of Public Local Laws of Baltimore City ("BC LL"). BC LL §§ 9-2 through 9-7 relate to the tenant's right of redemption and are exclusively for failure to pay rent actions.

However, the same provisions are not applicable to tenant holding over and breach of lease defendants in actions filed under RP § 8-402 and RP § 8-402.1. There, the tenant has no right of redemption and must vacate the landlord's property voluntarily after a judgment is entered or upon eviction. *See, e.g.*, RP § 8-402(b)(2)(i) ("the court shall thereupon give judgment for the restitution of the possession of said premises and shall **forthwith** issue its warrant to the sheriff or a constable in the respective counties commanding the tenant or person in possession **forthwith** to deliver to the landlord possession thereof…") (emphasis added).[4] Therefore, any local ordinance requiring the landlord to provide a reclamation period or advise the tenant of some future date of when the sheriff could arrive conflicts with the state law that requires the landlord be placed back in the immediate possession of their real property. There is no need to provide notification of the eviction date because the holdover tenant has no right to redeem the real property and has been ordered to vacate the same. Without the imposition of a stay, the landlord could and should be placed back in possession of their property shortly after the hearing.

---

[4] "Forthwith" is defined as "without any delay" or "immediately." https://www.merriam-webster.com/dictionary/forthwith (last accessed December 19, 2022).

Pursuant to State law, the only way a tenant holding over is not required to give the landlord immediate possession of the real property after entry of judgment is if an appeal and bond are filed pursuant to RP § 8-402(b)(2)(iii) or the District Court judge elects to stay enforcement of the judgment. However, the tenant must vacate once the stay period expires by operation of law or when the appeal is resolved.

Another important distinction between these three types of actions is that in both tenant holding over and breach of lease actions, the landlord is required to give the tenant advance written notice that the landlord desires to regain possession of the leased property before filing suit. *See* RP § 8-402(b)(1)(ii) and RP § 8-402.1(a)(1)(i). Under Subtitle 9 of the Code of Public Local Laws of Baltimore City, a landlord must provide a tenant with sixty (60) days advance notice before filing an action in District Court. *See* BC LL §§ 9-12, 9-14. "Such notice, without any additional notice, shall entitle the landlord to the benefit of law providing for the speedy recovery of the possession of lands or tenements held over by tenants." *See* BC LL § 9-19.

The same is not true for failure to pay rent actions where the landlord may file a District Court action immediately upon the nonpayment of rent. *See* RP § 8-401(a). Thus, hold over tenants in Baltimore City have been provided with at least two months' notice of the landlord's desire that they vacate the leased premises with their possessions and that they have refused to leave the premises before the landlord can file a District Court action. By the date of judgment, they have had months to prepare to vacate the Property with their personal property.

**C. Plaintiffs' Tenancy and Eviction**

1. Plaintiffs' Property Rental.[5]

[5] The facts regarding the rental are taken solely from Plaintiffs' Complaint filed at ECF 1. The City accepts them as true for the purposes of this motion only. The City reserves the right to challenge, rebut, and seek discovery about any factual assertion made by Plaintiffs in this matter.

Plaintiffs are Iesha Henriques and her mother, Embria Henriques, (the "Plaintiffs"). *See* Complaint, §6. According to their Complaint, Plaintiffs rented a property located at 4008 Gelston Drive, Baltimore, Maryland 21229 (the "Property") from landlord Tiffany Morris ("Morris" or the "landlord") in March of 2001. *See* Complaint, §12. The rental was residential, *i.e.*, for personal or family use. *See* Complaint, §13. The Complaint is absent any reference to the Property being designated or used by them as Section 8 housing that would indicate any periodic governmental inspection of the Property. *See* Complaint, *passim*.

On or about July 11, 2022, Ms. Morris filed a tenant holding over action against the Plaintiffs in the District Court of Maryland for Baltimore City under case number 010100114742022 (the "Eviction Case"). *See* Complaint, §19, 31. A hearing was scheduled in the state District Court wherein Plaintiffs could have contested the eviction, sought a stay in order to secure their belongings, or if they disagreed with the court's decision, sought an appeal. *See* Complaint, §19. However, Plaintiffs failed to appear for their judicial hearing in the Eviction Case through no fault of the City or Ms. Morris; therefore, Ms. Morris was granted a judgment in the Eviction Case. *See* Complaint, §19.

On or about September 6, 2022, the District Court for Baltimore City issued a warrant of restitution in the Eviction Case. Pursuant to that order, "[t]he judgment of possession may not be redeemed." Therefore, the state court confirmed RP § 8-402(b)(2).

2. <u>The Notice – The Court Order</u>

According to the docket in the Eviction Case, the clerk mailed Plaintiffs the warrant of restitution on September 7, 2022 via first-class mail to their address of record at the Property. A true and correct copy of the District Court of Maryland's Docket for the Eviction Case is attached hereto and incorporated herein as **Exhibit. 1**. *See also* Maryland Rule 1-324. The record is devoid

of any evidence that the warrant of restitution was returned as undeliverable by the U.S. Postal Service. *See* Ex. 1, *passim*.

In Maryland, warrant of restitution orders are issued on form DC-CV-081. A true and correct copy of that form as it existed at the time of the Henriques eviction is attached hereto and incorporated herein as Exhibit 2.[6] DC-CV-081 is a carbonless multi-part form of which there are two slightly different versions: one version is maintained in the court file, sent to the landlord, and the sheriff, and posted on the property at the time of the eviction, and another that is mailed to the defendant tenants by the District Court clerk in advance of the eviction. *See id*. The one mailed to tenants is unique because it provides Baltimore City tenants subject to eviction with conspicuous notice on the front and back pages about their eviction and the ramifications thereof, *i.e.*, it notifies them about the ECL. The other version only includes the notice on the back. However, that version too provides notice about the ECL and the potential effect of the abandonment provisions contained therein. The front of the mailed form includes the warning:

**TENANTS: NOTICE OF EVICTION**
The court has ordered you to be evicted. If the property is in Baltimore City, special procedures apply. See notice on back page for general information and for special procedures in Baltimore City.
Need free legal help? Call 410-260-1392 or mdcourts.gov/helpcenter

Further, the back of each version contains this conspicuous notice:

[6] The current version can be found at: https://www.courts.state.md.us/sites/default/files/court-forms/dccv081.pdf. (last accessed February 13, 2023)

**DEFENDANT/TENANT INFORMATION – Baltimore City (only)**
**(Baltimore City Housing & Urban Renewal Subtitle 8A)**

The landlord in a failure to pay rent case, must provide notice to the tenant of the first scheduled eviction date in two ways:

1. **Notice mailed by first-class mail** with a certificate of mailing **at least 14 days** before the first scheduled eviction date; **AND**
2. **Notice posted on the premises at least 7 days** before the first scheduled date of eviction.
   The day of mailing or posting is Day 1. Day 14 must be no later than the day before the scheduled date of eviction. Count holidays and weekends.

If you or the sheriff do not believe the notices were given properly, the sheriff may refer the issue to a judge to decide.

- If the judge determines that the landlord **DID NOT** give proper notice, the eviction will be vacated/cancelled, and the landlord may apply for a new Warrant of Restitution.
- If the judge determines that the landlord **DID** give proper notice, the sheriff will execute the eviction immediately.

**When the sheriff returns possession of the property to the landlord, any of your personal property left in or around the rental unit is considered abandoned.** You have no right to the property. The landlord may not put abandoned property in the street, sidewalk, alley, or on any public property. Illegal dumping of abandoned property from an eviction is a misdemeanor. Offenders are subject to a penalty of up to $1000 per day. A landlord may transport property to a landfill or solid waste facility or donate it to charity.

Therefore, the Plaintiffs were mailed a court order identifying the ECL by name, providing a summary of the same, providing a summary of the state law that they can be forcibly removed from the dwelling without warning after the date of that order, noting that the ECL's provisions abandonment provision applied to all evictions, and telling Plaintiffs where they could find legal assistance.

For a tenant holding over or breach of lease defendant, this is and should be their final warning to vacate the landlord's property or risk having their private property considered abandoned. Pursuant to State law, they no longer have the right to be present in the dwelling and neither do their belongings. *See* RP § 8-402(b)(2)(i). In fact, they are trespassers and have been for some time. *See Donnelly Advertising Corporation of Maryland v. Flaccomio*, 216 Md. 113, 127-28, 140 A.2d 165, 171-72 (1958)("[b]y operation of law, the tenant holding over became a trespasser, in the sense of being wrongfully in possession…regardless of the wishes of the tenant.") *See also* 2 *Friedman on Leases* § 18:4 at 18-40 (5th ed. 2006)("Under common law rule, if a tenant remains in possession of leased quarters, after the expiration of the term and without agreement with the landlord, landlord may elect to treat him either as a trespasser, and begin proceedings

against him, or treat the tenant as having commenced a new tenancy"). Here, Ms. Morris expressed her clear intention to treat Plaintiffs as trespassers by, *inter alia*, filing the Eviction Case against them and proceeding with the eviction.

3. The Notice – Baltimore City Sheriff's Office

In addition to receiving notice from the court about the risk of abandonment should the Plaintiffs continue to remain in the Property, Plaintiffs also received notice from the Baltimore City Sheriff's Department. On or about September 19, 2022 at 1:30 p.m., Lt. Hikeen Crampton of the Baltimore City Sheriff's Office—District Court Division posted an Eviction Notice on the Property. *See* Declaration of Lt. Hikeen Crampton, attached hereto and incorporated herein as **Exhibit 2**. The Notice identified Plaintiff Iesha Henriques, the Property address, and provided the eviction date and time. *Id*. Specifically, prior to the eviction, the Baltimore City Sheriff's Department advised Plaintiffs that they would be evicted on September 28, 2022 between 9 am and 10 am. *Id*. The Sheriff's Notice included a phone number to the Sheriff's department where Plaintiffs could call to verify the information contained in the notice. Therefore, at least 10 days before the eviction, Plaintiff were given notice of the date and time of the eviction. They were also advised about the Baltimore City law that stated that any personal property that remained in the Property at the time of the eviction would be considered abandoned.

4. The Eviction

After the hearing in the Eviction Case, after receiving notice of the ECL from the Court, and after receiving the specific date and time of the eviction from the Baltimore City Sheriff's Office—District Court Division, the Plaintiffs were evicted from the Property on the morning of September 28, 2022 as detailed in the Eviction Notice posted by the Sheriff's Office. *See* Ex. 2 and *See* Complaint, §§35-36.

## III. LEGAL STANDARD

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. at 555. Thus, in considering the Motion to Dismiss, this Court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009). Well-plead factual allegations contained in the Complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Even though Rule 8(a)(2) requires only a short and plain statement showing entitlement to relief, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the Complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success. *Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, this Court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id*.

Rule 56(a) of the Federal Rules of Civil Procedure provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To qualify as a "genuine" dispute, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Anderson*, 477 U.S. at 252).

It is axiomatic that when a court reviews an alleged violation of 14th Amendment for procedural and/or substantive due process, that the court must employ rational basis review. "It is by now well established that legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15 (1976)(citations omitted). The rational basis test asks not whether the legislation or the official action "is in every respect logically consistent with its aims to be constitutional," rather it "is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487–88 (1955)(citations omitted).

## IV. ARGUMENT

### A. Plaintiffs' 42 U.S.C. § 1983 Procedural Due Process Claim Fails As A Matter of Law Because They Failed to Exhaust Their State Court Remedies.

Even if notice was not provided, Plaintiffs' claims still fail as a matter of law. The Complaint seeks monetary recovery under 28 U.S.C. §1983 for an alleged procedural due process violation. *See* Complaint, *passim*. However, it is axiomatic that even if a property right is vested "no §1983 procedural due process violation exists when a party fails to exhaust both administrative and state court remedies…" *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141 (4th Cir. 2018). In analyzing this issue, a court must "consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Tri City Paving, Inc., v. Ashe County*, 281 F.3d 430, 436 (2002)(citations omitted). "[T]the constitutional violation actionable under §1983 is not complete…unless and until the State fails to provide due process." *Id*. at 437. The existence of State court remedies is relevant to the adjudication of a §1983 due process claim. *See Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008).

In *Rockville Cars*, the Fourth Circuit upheld the dismissal of a §1983 procedural due process claim where the Plaintiff failed to file an appeal, failed to seek an injunction, and failed to seek a declaration of its rights regarding its alleged property interest in State court. 891 F.3d at 149.

Here, the Plaintiffs failed to even appear at the Eviction Case trial to preserve their possessory rights in the Property and right to maintain their personal property in the same. According to them, their failure to appear had nothing to do with a lack of notice about the court processes available to them, but "because Plaintiffs were planning on moving already and were close to securing a new rental property…" Complaint, ¶19. After the clerk mailed them the warrant of restitution, which included the notice about the potential abandonment of their private property, Plaintiffs remained in the Property without seeking judicial recourse.

Now, after being served with both an Eviction Notice from the Sheriff with the exact date and time of the eviction and mailed the court order detailing the ECL, Plaintiffs are in this Court requesting money damages and attorney's fees when they could have simply removed their personal items from the Property or appeared in the District Court of Maryland. But that would have required them to engage in ANY type of process in the state courts, all of which they ignored. As to their State court remedies, Plaintiffs deemed it "unnecessary even to enter upon, let alone travel the entire length of, that road." *Mora*, 519 F.3d at 230 (citations omitted). Their procedural due process claim should be dismissed for this reason alone.[7]

**B. Plaintiffs Were Afforded Due Process.**

By posting an Eviction Notice stating the date and time of the eviction and mailing a copy of the warrant of restitution replete with information about the ECL and a summary of its contents to Plaintiffs' address of record, the Baltimore City Sheriff's Department and District Court of Maryland provided ample notice of the eviction and the ECL that exceeds the notice required. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950). "Procedural due process is simply a guarantee of fair procedures—typically notice and an opportunity to be heard." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (internal citations omitted). *See also Nelson v. Diversified Collection Services, Inc*., 961 F.Supp. 863, 868 (D. Md. 1997).

[7] Plaintiffs will no doubt argue that they were unaware of these remedies because of their potential *pro se* status. However, the law is clear that the rules of procedure apply equally to *pro se* litigants. See *Tretick v. Layman* 95 Md. App. 62 (1993). Further, the name and phone number for potential legal help was provided in the Warrant of Restitution mailed to the Property and the Sheriff's verification phone number was provided on the posted notice.

Per the Plaintiff, the due process in this case turns on notice. The Supreme Court has consistently held that the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane,* 339 U.S. at 313-314 (citations omitted). As such, the Court has expressly rejected "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way of the [government]." *Id*. at 313-314 (citations omitted). In fact, the Court has noted that "**none of our cases…has required actual notice**," instead "we have allowed the [g]overnment to defend the 'reasonableness and hence the constitutional validity of any chosen method…on the ground that it is in itself reasonably certain to inform those affected.'" *Dusenbery v. U.S.*, 534 U.S. 161, 169-170 (2002) (quoting *Mullane,* 339 U.S. at 315)(emphasis added).

The Supreme Court has consistently held that service by mail is a permissible and effective means to provide notice. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 792 (1983)(citations omitted)(holding that "mailed notice to [the affected party's] last known available address is sufficient before the government seeks to "sell real property on which payment of property taxes have been delinquent" (emphasis added)) and *Dusenbery*, 534 U.S. at 173 (mail addressed to prisoner about administrative forfeiture of property seized during his arrest constituted due process).

Here, three weeks before the eviction, Plaintiffs were mailed the warrant of restitution complete with notice regarding the potential abandonment of their possessions after they failed to appear at the Eviction Case trial. There is no dispute that the Plaintiffs were aware of the Eviction Case—they just elected not to appear. *See* Complaint, ¶19. Further, the Sheriff provided them with notice of the eviction date and time by posting the Property nine days before the eviction date.

*See* Ex. 2. Notice by posting is a statutorily permissible method to provide notice in eviction actions. *See* RP §8-402(b)(1)(ii)(3)-(4).

The two forms of notice provided to the Plaintiffs via two different methods of service were reasonably calculated to apprise them of the ECL's abandonment provisions and the date and time of their scheduled eviction. Both were provided after the Eviction Case trial and in advance of the eviction. Though it is unclear why the Plaintiffs did not observe the posting or receive notice as alleged, what is clear is that the methods used to provide them with notice were constitutionally sufficient for due process purposes. As such, even if the City was required to provide notice in tenant holding over actions like the one in this case, Plaintiffs' due process claims fail as a matter of law.

Further, "Substantive due process violations 'run only to state action so arbitrary and irrational, so unjustified by any circumstance of governmental interest, as to be literally incapable of avoidance of any pre-deprivation procedural protections or of adequate rectification by any post-deprivation remedies." *See*, *Mora*, 519 F.3d at 230 (*quoting Rucker v. Harford Cnty*., 946 F.2d 278, 281 (4th Cir. 1991)). Based on this standard, Plaintiffs' substantive due process claims cannot survive. The City has a significant interest in encouraging landlords and property managers to rent residential property to the residents of Baltimore City. Therefore, it had the right to institute a procedure to allow landlords to dispose of possessions left behind by tenants who it has been judicially determined no longer have the right to be in possession of a dwelling. Further, the City has a significant interest in ensuring that when tenants are evicted, their possessions are not put on the public streets and property of the City. This not only creates potential hazards for other citizens, it displaces the resident's possessions in a way that make it nearly impossible to recover.

When plaintiffs like the ones in this case are given notice of the relevant laws and court processes available to them, they cannot later claim that their substantive due process rights were violated.

**C. The Mayor and City Council Exercised Its Police Powers When Enacting the Eviction Chattel Law; Therefore, Plaintiffs' Takings Claims Fail As A Matter of Law**

In the Complaint, Plaintiffs make the all too common mistake of confusing a taking akin to the government's exercise of its eminent domain powers to that of the government's broader police powers—the distinction between these two issues matters. When the government through use of eminent domain exercises dominion regulatory or physical dominion over personal or real property, it must pay "just compensation." *See Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448 (2001). However, if a property owner suffers loss when the government exercises its police powers (outside of eminent domain), there is no compensable taking. *See New Orleans Pub. Servs. Inc. v. City of New Orleans*, 281 U.S. 682, 687, 50 S.Ct. 449 (1930). The Supreme Court has held that governmental actions taken to regulate private property pursuant to police powers do not necessitate payment of just compensation. *See Mugler v. Kansas*, 123 U.S. 623, 669 (1887) (a ban on alcohol production did not constitute a taking of a brewery because the state was merely banning a practice that was "itself a public nuisance).

A state's interest in promoting the health, safety, and welfare of its citizens is not simply substantial—it is compelling. *See Kolbe v. Hogan*, 849 F.3d 114, 139 (4th Cir. 2017). It cannot be disputed that municipalities have a valid police power interest and the right to regulate landlord-tenant matters. *See County Council of Montgomery County v. Investors Funding Corp*., 270 Md. 403, 312 A.2d 225 (1973). Indeed, landlord-tenant law is traditionally the domain of state and

local governments and governed by police power interests. *Perry v. Hous. Auth. of City of Charleston*, 664 F.2d 1210, 1216 (4th Cir. 1981).

Plaintiffs cannot rely on the common law definition of "abandonment" to save their claim. *See* Complaint, ¶49. In upholding a Baltimore County ordinance nearly identical to § 8A-4, Judge Bredar rejected this same argument and ruled that if the statutory language is clear, as here, "the Court must give it a 'reasonable interpretation.'" *Hall v. Greystar Management Services, LP*, 28 F.Supp.3d 490, 494 (D. Md. 2014). Thus, when the plain text of an ordinance provides that in the eviction context, property "shall be considered abandoned" under certain circumstances and those circumstances are met, the statutory provision leaves no room for an exception where a tenant "expresses an 'intention to again claim it or exercise rights of ownership over it.'" *Id.* (citations omitted).

Therefore, when a state or local government, in the exercise of its police powers, regulates the property interests of citizens, it may do so without compensation, even if the citizen's property interest loses all economic value. *See Maryland Shall Issue, Inc. v. Hogan*, 353 F.Supp.3d 400 (D. Md. 2018), *aff'd* 963 F.3d 356 (4th Cir. 2020), *cert denied* 141 S.Ct. 2595 (2001). Here, there is no question that the City has the right to regulate landlord-tenant actions that involve personal property. One potential reason for the City's exercise of its police powers in this context is to prevent landlords having the adjudicated right to possess their real property from placing evicted tenant's belongings in public alleyways or streets.

**D. § 8A-4 Did Not Violate Plaintiffs' Fourth Amendment Right To Be Free of Unreasonable Seizures.**

Plaintiffs' Fourth Amendment claim fails as a matter of law because no City actor ever seized anything. As the Supreme Court held in *Torres v. Madrid*, 141 S.Ct. 989, 995 (2021), "when speaking of property, '[f]rom the time of the founding [of this nation] to the present, the

word ‘seizure’ has meant taking possession.’” *Id.* (quoting *California v. Hodari D.*, 499 U.S. 624 (1991)). Without possession there can be no seizure. Plaintiffs fail to allege that the City ever possessed any of their personal property. Noticeably absent from the Complaint is any claim that the City was “unjustly enriched” by the eviction in this case. If the City gained actual possession of the Plaintiffs’ alleged valuable personal property would not such a claim follow? Further, the Plaintiffs would then likely make a demand on the City to return their personal property. Plaintiffs’ decision to sue Ms. Morris for unjust enrichment and demand that *she* and not the City return said property is their tacit admission that the City never seized or possessed their personal property. In truth, Ms. Morris gained possession of the property by and through the unchallenged warrant of restitution issued by the District Court of Maryland—not because of any action by the City or the ECL.

§ 8A-4 rationally advances a legitimate City interest of placing landlords back in actual possession of their real property and to have full use and enjoyment of that property with the immediacy that State law requires for holdover tenant actions. Tenants, like Plaintiffs, who receive notice about the laws governing this process and refuse to engage in any state court due process should not be allowed to upend this goal. Because § 8A-4 does not involve any seizure or taking of any property by the City of Baltimore, there are no Fourth Amendment implications.

Ms. Morris gained possession of Plaintiffs’ property by virtue of the District Court eviction process they have not challenged—not anything to do with the ECL.

**E. Plaintiffs’ Declaratory Judgment Demand Fails As A Matter of Law.**

Plaintiffs’ Complaint requests that this court issue a declaration that ECL §8A-4 is unconstitutional pursuant to the Fourth, Fifth, and Fourteenth Amendments. *See* Complaint ¶ 55. However, Plaintiffs have put the proverbial cart before the horse. As detailed above, none of

Plaintiffs' constitutional rights were violated in this matter: constitutionally approved methods of delivery for notice were provided, the City never seized any of their personal property, and there exists no valid Fifth Amendment takings claim. The remedy provided by a declaratory judgment only applies to cases and controversies in the constitutional sense that are real. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*. at 241.

Here, Plaintiff seeks a declaratory judgment that ECL §8A-4 is unconstitutional because of a lack of notice and other constitutional claims. As detailed above, all of those claims fail as a matter of law because of the undisputed facts and law applicable to this matter. Therefore, Plaintiffs' request for a declaratory judgment must fail as well.

## V. CONCLUSION

For the foregoing reasons, this Court should grant the Mayor and City Council of Baltimore's Motion to Dismiss or in the Alternative Motion for Summary Judgment.

Date: February 13, 2023

Respectfully submitted,

EBONY M. THOMPSON
Acting City Solicitor

*/s/ Renita L. Collins*

RENITA L. COLLINS (#28637)
Chief Solicitor
HANNA MARIE C. SHEEHAN (#19531)
Chief Solicitor
Baltimore City Law Department
100 N. Holliday Street
City Hall Baltimore, MD 21202
Phone: 410-396-3930
Fax: 410-547-1025
Renita.Collins@baltimorecity.gov
Hanna.Sheehan@baltimorecity.gov
*Counsel for Defendant Mayor and City Council of Baltimore*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of February 2023, the forgoing Memorandum of Law was filed in accordance with the Electronic Filing Requirements and Procedures, as established by the United States District Court for the District of Maryland and mailed to *the pro se* party at:

Tiffany Morris
10 N. Calvert Street, #903
Baltimore, MD 21202

A paper copy will be provided to the Clerk.

*/s/ Renita L. Collins*

RENITA L. COLLINS (#28637)
Chief Solicitor